Cathy Estrella
195 Montana Del Lago
Rancho Santa Margarita, Ca 92688
949-308-0499

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| Cathy Estrella,<br><br>           Plaintiff,<br><br>**VS.)**<br><br>  1.  PNF Realty, Inc<br><br>  2.  Peter N. Floros<br>                 Defendants | Case No.:<br><br><br>**COMPLAINT  FOR  DECLARATORY**<br><br>**AND INJUNCTIVE RELIEF** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

### INTRODUCTION

1.  Plaintiff Cathy Estrella, a disabled veteran and homeowner, brings this action against Defendants PNF Realty, Inc. and Peter N. Floros for violations of federal and state laws arising from the unlawful origination, servicing, and foreclosure of her residential property located at 1 Bayview Drive, Eastport, Maine 04631 ("the Property").

2.  Defendants engaged in unlicensed mortgage lending and servicing activities, executed a wrongful non-judicial foreclosure, and manipulated legal entities to circumvent consumer protection statutes, resulting in significant harm to Plaintiff.

### PARTIES

3. Plaintiff, Cathy Estrella, is an individual residing at 195 Montana Del Lago, Rancho Santa Margarita, California 92688, and is a citizen of the State of California.

4. Defendant, PNF Realty, Inc., is a business entity incorporated in the State of New Hampshire, with its principal place of business located at 282 Middle Street, Portsmouth, New Hampshire 03801.

5. Defendant, Peter N. Floros, is, upon information and belief, a resident of the State of New Hampshire and is the principal and controlling officer of PNF Realty, Inc.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under federal law, specifically the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, and the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq. Supplemental jurisdiction over Plaintiff's related state law claims is proper under 28 U.S.C. § 1367. Additionally, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

7. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the real property that is the subject of this action is located within this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## FACTUAL ALLEGATIONS

8. In November 2021, Plaintiff used proceeds from the sale of her home in California to purchase the property at 1 Bayview, Eastport Maine.

9. In November 2022, Plaintiff sought financing to make improvements on 1 Bayview and for personal use to prepare 1 Bayview to be her primary retirement residence.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

10. At the last moment, Defendants required Plaintiff to form a limited liability company (LLC) to obtain the loan, misrepresenting that this structure was necessary for financing approval.

11. Relying on Defendants' representations, Plaintiff formed 1 Bayview, LLC ("the LLC") with herself as the sole member.

12. On or about November 2022, Defendants originated a mortgage loan to the LLC, secured by the Property.

13. At all relevant times, Defendants were not licensed to engage in mortgage lending or servicing in Maine, in violation of Maine Revised Statutes Title 9-A § 2-301, which mandates licensure for such activities.

14. Plaintiff planned to reside at the Property and treat it as her primary residence once improvements were fully made.

15. Due to unforeseeable consequences of the COVID-19 Pandemic to include personal business losses, slow regrowth after business closures, personal health issues, and family deaths related to COVID 19, in 2024, Plaintiff experienced financial hardship and sought to negotiate a loan modification or repayment plan with Defendants.

16. Defendants refused to negotiate and initiated a non-judicial foreclosure, asserting that the loan was a commercial transaction due to the LLC's involvement.

17. While the Plaintiff was actively attempting to communicate with the Defendant and negotiate with the Defendant, On March 20th 2025 Defendants conducted a foreclosure sale without judicial oversight, resulting in the sale of the Property.

18. The Defendant even refused a certified letter from the Plaintiff at that time. The Defendant's refused to answer phone calls and the Defendant's attorney initially

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 3

indicated they would work with the Plaintiff while he was actively engaging in the auction.

19. On information and belief, the foreclosure sale was not conducted in an arms-length transaction, as Defendants or their affiliates purchased the Property for $10,000—an amount grossly below fair market value.

20. Upon reviewing public deed records, Plaintiff discovered that title to the Property is now held by an entity affiliated with Peter N. Floros, namely PNF Realty, LLC, indicating that Defendants sold the Property to themselves or related entities through a sham transaction.

21. Plaintiff further discovered that Peter N. Floros owns or controls multiple LLCs that he routinely uses to facilitate mortgage transactions and subsequent foreclosures in a similar pattern.

22. These facts establish a pattern of self-dealing and predatory lending, where Defendants coerce consumers into LLC-based loans, foreclose under commercial rules, and then reacquire the property at depressed prices through affiliated shell companies.

23. Upon information and belief, Defendants sold the subject property at auction to another entity under their control for only $10,000, despite a significantly higher fair market value. Plaintiff asserts this was a non-arm's length transaction, constituting self-dealing and unjust enrichment."

24. Plaintiff submitted a formal complaint to the Federal Bureau of Investigation (FBI). Special Agent Jill Laroe of the FBI Boston Field Division acknowledged receipt and confirmed that she is reviewing the matter and intends to discuss it with the U.S. Attorney's Office.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 4

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATION OF THE TRUTH IN LENDING ACT (TILA), 15 U.S.C. § 1601 ET SEQ.

25. Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully set forth herein.

26. **TILA's Purpose and Disclosure Requirements:** The Truth in Lending Act (TILA) was enacted to promote the informed use of consumer credit by requiring clear and accurate disclosure of terms in credit transactions. This enables consumers to compare credit terms effectively and make informed decisions.

27. **Defendants' Mischaracterization of the Loan**: Defendants deliberately mischaracterized Plaintiff's mortgage loan as a commercial transaction by mandating the formation of a Limited Liability Company (LLC) to serve as the nominal borrower. In reality, Plaintiff used the loan to finance her primary residence, qualifying it as a consumer credit transaction under TILA. This mischaracterization was a strategic attempt to evade TILA's disclosure requirements.

28. **Failure to Provide Required Disclosures:** By mislabeling the loan, Defendants failed to furnish Plaintiff with the requisite TILA disclosures, including:

  a. Right of Rescission Notice: TILA grants borrowers the right to rescind certain credit transactions involving a lien on the borrower's principal dwelling within three days of consummation, with an extended period of up to three years if the required notice is not provided.

b. Material Disclosures: Essential information such as the annual percentage rate (APR), finance charges, amount financed, total payments, and payment schedule.

29. **Deprivation of Informed Use of Credit and Rescission Opportunity**: Defendants' failure to provide the mandated disclosures deprived Plaintiff of the opportunity to make an informed decision regarding her mortgage and to exercise her right to rescind the transaction, as intended by TILA. The Supreme Court has emphasized that a borrower may exercise the right of rescission simply by notifying the creditor within the three-year period, without the necessity of filing suit.

30. **Entitlement to Remedies**: As a direct and proximate result of Defendants' TILA violations, Plaintiff is entitled to:

a. Statutory Damages: TILA provides for statutory damages in cases where required disclosures are not provided.

b. Extended Right of Rescission: Due to Defendants' failure to deliver the required notices, Plaintiff's right to rescind extends up to three years from the date of consummation.

c. Attorney's Fees and Costs: TILA mandates the award of attorney's fees and costs to successful plaintiffs.

31. **Conclusion**: Defendants' deliberate mischaracterization of Plaintiff's mortgage as a commercial transaction and their subsequent failure to provide the disclosures mandated by TILA have caused Plaintiff significant harm. Accordingly, Plaintiff seeks statutory damages, recognition of her extended right to rescind, attorney's fees, and any other relief deemed just and proper by this Court.

## COUNT II

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 6

## UNLICENSED MORTGAGE LENDING IN VIOLATION OF FEDERAL

## AND STATE LAWS

32. **Incorporation of Allegations:** Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully set forth herein.

33. **Defendants' Unlicensed Lending Activities**: Defendants engaged in mortgage lending and servicing activities within the State of Maine without obtaining the necessary licenses as mandated by both federal and state laws.

34. **Violation of Maine Revised Statutes**: Pursuant to Maine Revised Statutes Title 9-A, § 2-301, any entity that is not a supervised financial organization must obtain a license from the administrator before making or servicing supervised loans. Defendants' failure to secure such a license constitutes a direct violation of this statute.

35. **Violation of the Secure and Fair Enforcement for Mortgage Licensing Act (SAFE Act):** At the federal level, the Secure and Fair Enforcement for Mortgage Licensing Act of 2008 (SAFE Act) requires individuals acting as loan originators to be state-licensed or federally registered. Specifically, 12 U.S.C. § 5104(a) mandates that applicants furnish information concerning their identity, including fingerprints for a background check, and demonstrate financial responsibility, character, and general fitness to command the confidence of the community. Defendants' operations without proper licensing contravene these federal requirements.

36. **Public Policy Considerations:** The licensing requirements established by both federal and state laws are designed to protect consumers from predatory lending practices and ensure that mortgage lenders operate with transparency and accountability. By

circumventing these requirements, Defendants undermined public policy objectives aimed at safeguarding homeowners like Plaintiff.

37. **Precedent from Maine Supreme Judicial Court:** In Reagan v. Racal Mortgage, Inc., 715 A.2d 925 (Me. 1998), the Maine Supreme Judicial Court addressed the implications of unlicensed lending. The court held that a lender's failure to obtain the requisite license rendered the mortgage and subsequent foreclosure actions void ab initio. This precedent underscores the seriousness of Defendants' unlicensed activities and their legal consequences.

38. **Causation and Damages**: As a direct and proximate result of Defendants' unlicensed lending practices, Plaintiff suffered significant harm, including but not limited to financial losses and the loss of her home. These damages are a foreseeable consequence of Defendants' statutory violations and disregard for regulatory safeguards.

39. **Entitlement to Relief:** In light of Defendants' violations of federal and state licensing requirements, Plaintiff seeks:

a. Declaratory Relief: A judicial declaration that the mortgage loan and any related agreements are void ab initio due to Defendants' unlicensed status.

b. Injunctive Relief: An order enjoining Defendants from enforcing the terms of the void mortgage and from engaging in further unlicensed lending activities.

c. Restitution and Damages: Restitution of all payments made under the void mortgage agreement and compensation for additional damages incurred as a result of Defendants' unlawful.

 d. Attorney's Fees and Costs: An award of attorney's fees and litigation costs as permitted by applicable laws.

40. **Conclusion**: Defendants' engagement in unlicensed mortgage lending activities constitutes a blatant violation of both federal and state laws designed to protect consumers. Their actions have caused Plaintiff substantial harm, warranting the relief sought herein.

## COUNT IIIV

### PREDATORY LENDING / DECEPTIVE PRACTICES (COMMON LAW AND FEDERAL PUBLIC POLICY)

41. Plaintiff repeats and incorporates all preceding paragraphs.

42. Defendants engaged in predatory lending practices by:

1. Forcing Plaintiff, a disabled veteran, to form an LLC to strip away residential borrower protections;

2. Issuing a high-risk, high-interest mortgage with unconscionable terms;

3. Structuring the loan as commercial to evade federal regulations including the Truth in Lending Act (TILA);

4. Refusing to negotiate or modify the loan despite Plaintiff's willingness to cure the alleged default.

43. Courts have found similar schemes unlawful. In Commonwealth v. Fremont Investment & Loan, 897 N.E.2d 548 (Mass. 2008), the court held that mortgages designed to fail, with built-in foreclosure traps, constitute predatory lending and violate consumer protection statutes.

44. Defendants' scheme exploited Plaintiff's financial vulnerability and disabled status for personal financial gain, in violation of federal public policy protecting consumers and veterans.

45. Plaintiff seeks damages and equitable relief for Defendants' predatory conduct.

## COUNT IV

## FRAUD AND FRAUDULENT MISREPRESENTATION

46. Plaintiff repeats and incorporates all preceding paragraphs.

47. Defendants engaged in a systematic and deceptive lending scheme designed to evade consumer protection laws, exploit vulnerable borrowers, and unjustly enrich themselves through unlawful foreclosures.

48. **Manipulative Legal Structuring:** Defendants intentionally coerced borrowers into forming LLCs before issuing loans, a tactic designed to:

a. Bypass consumer lending laws and protections under the Maine Consumer Credit Code (Title 9-A M.R.S. § 2-301) and federal mortgage regulations (12 U.S.C. § 5104, SAFE Act).

b. Deprive borrowers of statutory rights, including anti-predatory lending safeguards, foreclosure protections, and fair lending disclosures.

c. Shield Defendants from liability by forcing borrowers to operate under an artificial business structure, preventing them from invoking consumer defense statutes.

41. **Pattern of Coercion & Predatory Practices**: Defendants systematically engaged in conduct that constitutes constructive fraud, fraudulent inducement, and a pattern of racketeering activity under federal law. This includes:

a. Targeting financially vulnerable borrowers, particularly those unfamiliar with complex business structures and legal ramifications.

b. Structuring loans to guarantee default, including imposing unconscionable terms, high-interest rates, and balloon payments that borrowers could not reasonably afford.

c. Fast-tracking foreclosures by exploiting the artificially created LLC structure, bypassing consumer foreclosure protections, and executing foreclosures without due process.

d. Retaining foreclosed properties for profit, further enriching Defendants at the expense of borrowers misled into an inescapable financial trap.

42. **Intent to Evade Licensing Requirements & Consumer Protections**: Defendants falsely claimed licensing exemptions under Maine Revised Statutes Title 9-A § 2-301, but their conduct demonstrates an intent to circumvent licensing laws rather than operate in good faith. Specifically:

a. Defendants' practice of structuring transactions through LLCs does not exempt them from licensing when the underlying transaction is, in substance, a consumer mortgage loan.

b. The SAFE Act (12 U.S.C. § 5104) mandates licensing and regulation of mortgage lenders to prevent precisely these kinds of predatory tactics. Defendants' scheme violates federal public policy and is therefore void and unenforceable.

c. Maine law (Reagan v. Racal Mortgage, Inc., 715 A.2d 925 (Me. 1998)) holds that lending conducted without proper licensing renders the mortgage void ab initio, which extends to all foreclosure proceedings initiated by Defendants.

43. Civil RICO Violation – Pattern of Racketeering Activity (18 U.S.C. § 1962(c)): Defendants' ongoing scheme of fraudulent lending, coercion, and foreclosure abuse constitutes a pattern of racketeering activity, meeting the elements of a Civil RICO claim:

a. Defendants engaged in multiple predicate acts of fraud, including fraudulent inducement, wire fraud, and financial deception, over an extended period.

b. The scheme involved continuous fraudulent activity, affecting multiple victims beyond Plaintiff, demonstrating a pattern rather than isolated misconduct.

c. Defendants' activities were executed through an enterprise, utilizing LLC formations, deceptive contracts, and fast-track foreclosures as instrumentalities of fraud.

**COUNT V**

**UNJUST ENRICHMENT**

44. **Incorporation of Allegations**: Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully set forth herein.

45. **Unjust Enrichment Defined**: Under federal and state common law, unjust enrichment occurs when one party unfairly benefits at another's expense in a manner that is inequitable and contrary to good conscience. See Restatement (Third) of Restitution and Unjust Enrichment § 1.

46. **Defendants' Unjust Gains:** Defendants have been unjustly enriched through the following wrongful actions:

a. Collection of Payments on an Illegal and Void Mortgage: Defendants demanded and collected payments on a mortgage loan that was originated in violation of state and federal licensing laws. Loans made by unlicensed lenders are unenforceable as a matter of law, making Defendants' collection of payments unjust. See Reagan v. Racal Mortgage, Inc.,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 12

715 A.2d 925 (Me. 1998) (holding that unlicensed lenders cannot enforce loans or collect payments).

b. Foreclosure Without Legal Authority: Defendants executed a non-judicial foreclosure despite lacking the proper legal authority. Courts have ruled that when a lender proceeds with a foreclosure without satisfying statutory requirements, it constitutes unjust enrichment. See U.S. Bank N.A. v. Ibanez, 458 Mass. 637 (2011) (foreclosure without proper authority results in an invalid title transfer).

c. Retaining the Property or Proceeds from an Unlawful Sale: Defendants wrongfully foreclosed on Plaintiff's home and either retained the property or profited from its sale. It is unjust for Defendants to profit from an illegal transaction that was induced by fraud and statutory violations. See In re Marron, 455 B.R. 1 (Bankr. D. Mass. 2011) (finding that improperly obtained foreclosure proceeds must be disgorged as unjust enrichment).

47. **Lack of Legal Justification:** Defendants have no valid claim to the funds received from Plaintiff's payments or from the foreclosure sale. Under principles of equity, a party cannot retain benefits obtained through misconduct, misrepresentation, or statutory violations. See Hartford v. Doucette, 819 A.2d 829 (Me. 2003) (holding that a party who benefits unjustly must return the gains).

48. **Entitlement to Relief**: Plaintiff seeks restitution and disgorgement of all funds unlawfully received by Defendants, including:

a. A full refund of all mortgage payments made under the void and unenforceable loan;

b. Disgorgement of any profits Defendants received from the wrongful foreclosure sale;

c. Prejudgment interest to compensate Plaintiff for financial harm suffered as a result of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -
13

1    Defendants'                                                    misconduct;

2    d. Attorney's fees and costs, as equitable relief is warranted in cases of wrongful foreclosure

3    and fraudulent conduct.

4

5    **49. Conclusion**: Defendants have been unjustly enriched at Plaintiff's expense by engaging

6        in unlawful lending and foreclosure practices. This Court should order restitution,

7        disgorgement, and all necessary relief to restore Plaintiff to her rightful position.

8                                **COUNT VI**

9    **DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF (28 U.S.C. §**

10                                    **2201)**

11

12   **50.** Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though

13        fully set forth herein.

14   **51.** An actual and justiciable controversy exists between Plaintiff and Defendants

15        concerning the validity of the mortgage, the foreclosure sale, and Defendants' claim to

16        ownership of the Property. Plaintiff seeks a declaration of her rights, as well as injunctive

17
18        relief to prevent irreparable harm resulting from Defendants' unlawful conduct.

19   **52.** Under the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court has the power to

20        declare the rights and legal relations of the parties. Plaintiff seeks a judicial

21        determination that the mortgage and foreclosure sale are void. Because Defendants

22        engaged in unlicensed lending in violation of Maine Revised Statutes Title 9-A § 2-301

23        and the Secure and Fair Enforcement for Mortgage Licensing Act (SAFE Act), 12

24        U.S.C. § 5104, the mortgage loan is void ab initio. Additionally, the foreclosure sale was

25
26        conducted without legal authority, rendering it unlawful and unenforceable.

27

28                            COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -
                                                                                    14

**53.** The Maine Supreme Court has held that foreclosures initiated by unlicensed lenders are void. See Reagan v. Racal Mortgage, Inc., 715 A.2d 925 (Me. 1998).

**54.** Because the mortgage was void from inception, Defendants never had a legitimate security interest in the Property. Any foreclosure deed or transfer of title is legally ineffective and must be set aside. Defendants' continued assertion of ownership or financial interest in the Property is without merit and must be nullified by judicial declaration.

**55.** In addition to declaratory relief, Plaintiff seeks an injunction under Rule 65 of the Federal Rules of Civil Procedure to prevent Defendants from continuing their unlawful conduct and causing further irreparable harm. Plaintiff requests that the Court issue a preliminary and permanent injunction prohibiting Defendants, or any third party acting on their behalf, from selling, transferring, or encumbering the Property in any manner. Defendants must also be enjoined from attempting to collect payments on the illegal mortgage and from filing any additional legal action to enforce an invalid foreclosure.

**56.** Plaintiff further seeks a mandatory injunction requiring Defendants to immediately rescind any foreclosure sale conducted in violation of state and federal law and to restore Plaintiff's legal title to the Property, free of any liens or encumbrances arising from the void mortgage.

**57.** Legal precedent strongly supports Plaintiff's entitlement to injunctive relief. In Winter v. NRDC, 555 U.S. 7 (2008), the U.S. Supreme Court held that a party seeking an injunction must demonstrate (1) a likelihood of success on the merits, (2) irreparable harm absent relief, (3) that the balance of equities favors relief, and (4) that an injunction serves the public interest. Plaintiff meets all these factors, as she has shown that

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -
15

Defendants violated multiple federal and state laws, and that allowing them to retain title would cause irreparable harm.

58. Furthermore, in Bank of Am., N.A. v. Greenleaf, 2014 ME 89, 96 A.3d 700, the Maine Supreme Court ruled that when a party lacks standing to foreclose, the foreclosure is void and the borrower retains their rights to the property. Similarly, in U.S. Bank N.A. v. Ibanez, 458 Mass. 637 (2011), the Massachusetts Supreme Court held that wrongful foreclosures result in invalid title transfers, further supporting Plaintiff's claim for declaratory relief to restore her property rights.

59. The balance of equities strongly favors Plaintiff. Defendants knowingly violated state and federal laws, depriving Plaintiff of her home through an illegal and deceptive transaction. As a disabled veteran, Plaintiff has suffered severe financial and emotional distress due to Defendants' actions. Public policy strongly favors preventing predatory lending and ensuring that mortgage lenders comply with licensing and consumer protection laws.

60. Plaintiff has established an actual controversy regarding the validity of the mortgage and foreclosure. This Court should issue a declaratory judgment confirming that the mortgage and foreclosure are void and a permanent injunction preventing Defendants from taking further unlawful action against the Property.

**COUNT VII: Fraudulent Transfer (Self-Dealing Foreclosure Sale)**

61. Plaintiff incorporates by reference all preceding paragraphs.

62. Defendants, including PNF Realty, Inc. and Peter N. Floros, orchestrated a foreclosure sale of Plaintiff's property located at 1 Bayview Drive, Eastport, Maine, on March 20, 2025. The property was sold for a mere $10,000 to an entity affiliated with Defendant Floros, despite its significantly higher market value. This transaction was not conducted

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -
16

at arm's length and lacked fair market valuation, transparency, or competitive bidding, constituting a fraudulent transfer designed to deprive Plaintiff of her equity and conceal the unlawful benefit from judicial scrutiny.

63. Under the Uniform Fraudulent Transfer Act (UFTA), adopted by Maine, a transfer made with actual intent to hinder, delay, or defraud any creditor is considered fraudulent. The sale of Plaintiff's property to an affiliated entity for a grossly inadequate price demonstrates such intent. In *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), the Supreme Court held that a foreclosure sale conducted in accordance with state law is presumed to be for reasonably equivalent value. However, this presumption does not apply when the sale is to an insider or lacks competitive bidding, as is the case here.

64. Furthermore, the use of affiliated LLCs to acquire the property at a depressed price indicates a pattern of self-dealing and predatory lending practices. Courts have recognized that transfers to insiders under such circumstances are subject to heightened scrutiny. The transaction in question violates public policy, equity, and standards of fair dealing, and constitutes actionable self-dealing.

65. Plaintiff seeks to void the transfer under applicable equitable principles and recover restitution and all related damages, including costs, fees, and punitive damages.

## COUNT VIII
## CIVIL CONSPIRACY TO DEFRAUD (USE OF MULTIPLE LLCS)

66. Plaintiff incorporates by reference all preceding paragraphs.

67. Defendants, including PNF Realty, Inc. and Peter N. Floros, operated in concert with other undisclosed affiliated LLCs to execute a scheme of predatory lending, unlawful foreclosure, and wrongful transfer of property titles. This conspiracy involved: (1) coercing borrowers into forming LLCs; (2) misclassifying residential loans as commercial; (3) evading state and federal lending regulations; (4) foreclosing non-judicially under commercial rules; and (5) reacquiring the properties via insider LLCs at depressed values.

68. Such coordinated actions were undertaken willfully and maliciously to defraud Plaintiff and similarly situated borrowers, constituting a civil conspiracy to commit fraud and abuse legal structures. In *Corbit v. JI Case Co.*, 70 Wash. 2d 522 (1967), the court held that an actionable civil conspiracy exists if two or more persons combine to accomplish an unlawful purpose or combine to accomplish some purpose not in itself unlawful by unlawful means.

**69.** Plaintiff seeks compensatory and punitive damages and all equitable relief to unwind the fraudulent scheme.

## COUNT IX
### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) – 15 U.S.C. § 1692F

**70.** Plaintiff incorporates by reference all preceding paragraphs.

**71.** Defendants, acting as debt collectors within the meaning of the Fair Debt Collection Practices Act (FDCPA), used unfair and unconscionable means to collect a debt by: (a) misrepresenting the legal nature of the loan; (b) initiating foreclosure without judicial authority; (c) failing to provide the notices required under federal debt collection law; and (d) selling the property to themselves in a manner that concealed material facts and violated fundamental fairness.

**72.** Under 15 U.S.C. § 1692f, such conduct is prohibited, particularly when aimed at consumers like Plaintiff who are not given meaningful opportunity to challenge the debt. In *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. ___ (2019), the Supreme Court held that entities engaged in nonjudicial foreclosure proceedings are subject to certain provisions of the FDCPA, including those prohibiting unfair practices.

**73.** Plaintiff seeks statutory damages, actual damages, costs, and attorney's fees under 15 U.S.C. § 1692k.

## COUNT X
### CONSTRUCTIVE TRUST AND EQUITABLE RELIEF

**74.** Plaintiff incorporates by reference all preceding paragraphs.

**75.** As a result of Defendants' fraudulent, deceptive, and unlawful conduct, they now possess legal title to Plaintiff's property through self-dealing and manipulation of the foreclosure process. Defendants have been unjustly enriched at Plaintiff's expense and have wrongfully acquired title to the property.

**76.** A constructive trust is an equitable remedy imposed by a court to prevent the unjust enrichment of a party who has obtained property it should not be holding. In *Hogg v. Walker*, 622 A.2d 648 (Del. 1993), the court held that a constructive trust may be imposed when a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.

**77.** Plaintiff requests the Court to impose a constructive trust over the property located at 1 Bayview Drive, Eastport, Maine, and any proceeds derived therefrom, and to order the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -

return of legal title to Plaintiff or award full restitution and damages equal to the property's fair market value.

## PRAYER FOR RELIEF

**78.** WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare the mortgage and foreclosure void ab initio;

2. Issue a permanent injunction prohibiting any further enforcement of the illegal loan;

3. Order restitution and disgorgement of all profits Defendants obtained through their wrongful acts;

4. Plaintiff respectfully requests that the Court declare the foreclosure sale void, rescind the transaction, and restore title of the property at 1 Bayview Drive, Eastport, Maine, to Plaintiff's name.

5. Plaintiff seeks a preliminary and permanent injunction prohibiting the transfer, sale, or encumbrance of the subject property while this action is pending.

6. Restore Plaintiff's legal title to the Property free and clear of any liens;

7. Award compensatory, statutory, and punitive damages as permitted by law;

8. Grant any further relief as the Court deems just and proper.

Respectfully Submitted,

Cathy Estrella

*Plaintiff Pro per*

1

**VERIFICATION**

2

I, Cathy Estrella, the Plaintiff in the foregoing Complaint, declare under penalty of perjury

3

pursuant to 28 U.S.C. § 1746 that I have read the allegations contained therein and that the facts

4

stated are true and correct to the best of my knowledge, information, and belief.

5

6

I certify that the factual statements made in the Complaint are based on my personal knowledge

7

and a reasonable belief formed after inquiry into the facts of this case. I understand that willfully

8

providing false information in this declaration may subject me to penalties for perjury.

9

Executed this 15th day of May 2025

10

11

_____

12

**Cathy**                                                                                          **Estrella**

13

195                          Montana                          Del                          Lago

14

Rancho Santa Margarita, CA 92688

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 20