UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| CATHY ESTRELLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25-cv-00250-SDN |
| | ) | |
| PNF REALTY, INC., and PETER N. FLOROS, | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Plaintiff Cathy Estrella brings this suit against PNF Realty, INC. ("PNF") and its director, Peter N. Floros, for alleged violations of federal and state law arising out of a loan Ms. Estrella obtained from PNF. Ms. Estrella sought the loan to make improvements on her property located in Eastport, Maine, which she also used as collateral to obtain the loan. Unfortunately, Ms. Estrella defaulted on the loan, and PNF foreclosed on Ms. Estrella's property. PNF subsequently purchased the property at the foreclosure sale. Ms. Estrella now claims that PNF acted in violation of various laws by misrepresenting the type of loan she obtained and that PNF did not have a proper basis for its foreclosure on her Eastport property. Ms. Estrella moves for preliminary injunctive relief to prevent any further sale of the Eastport property during the pendency of this matter. For the following reasons, Ms. Estrella's motion is denied.

### **Background**

I draw these facts from all documents of "evidentiary quality" in the record, including affidavits. *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 223 (1st Cir.

2003); *see Calvary Chapel Belfast v. Univ. of Maine Sys.*, No. 24-cv-00392, 2025 WL
71701, at *1 (D. Me. Jan. 10, 2025).

## I. Pre-Loan Activity

Ms. Estrella is a resident of California and a disabled veteran. In November of
2021, she used her personal funds to purchase the property located at 1 Bayview Drive in
Eastport, Maine (the "Property") in full. Ms. Estrella claims that she "planned to live" at
the Property, and that she intended for it to serve as her "primary residence, not a
business location." ECF No. 1-1, ¶ 4. In October of 2022, Ms. Estrella contacted PNF to
obtain funds so that she could make improvements on the Property. PNF claims that
Ms. Estrella approached it "based on her business interest in developing a rental real
estate" on the Property. ECF No. 10-1, ¶ 8. PNF explains that Ms. Estrella sought funds
to build a main home and two rental homes on the property and "to install various
property utilities," such as a septic system, electrical system, and a well. *Id.* ¶ 10; ECF
No. 10-2, at 2. Further, PNF claims that Ms. Estrella expressed her "interest[] in
investing in a camping trailer manufacturer and becoming a distributor" of camping
trailers. ECF No. 10-1, ¶ 11; ECF No. 10-2 at 2. In order to enter into the commercial
loan, PNF required Ms. Estrella to transfer ownership of the Property to an LLC.[1] ECF
No. 10-1, ¶ 15; ECF No. 10-3 at 4.

Ms. Estrella formed "1 Bayview, LLC" with herself as the sole member. PNF
approved and committed to Ms. Estrella's loan request in the amount of $100,000. *See*

---

[1] Ms. Estrella claims that, with respect to the commercial loan, she "received no warnings" or "opportunity
to rescind." Pl.'s Mot. TRO at 2 (ECF No. 4); ECF No. 4-1, ¶ 7 ("Despite my confusion and hesitation, I
agreed to his demand."). However, she presents no evidence to support her assertion. Instead, Defendants
submitted an email communication between Ms. Estrella and Mr. Floros that demonstrates the opposite.
ECF No. 10-3 at 4. After Mr. Floros explained the loan conditions to Ms. Estrella, including the
requirement that she transfer ownership of the Property to an LLC, Ms. Estrella responded, "[t]hat
sounds just fine. Do you want me to start the process of placing the property into an LLC?" *Id.*

ECF No. 10-4. The loan closed on November 1, 2022, and Ms. Estrella's payment obligations became due on December 1, 2022.

## II. Loan Terms

Condition "l" of the Loan Commitment letter stated:

> [n]o stockholder, director, officer or employee of Lender shall have any personal liability to Borrower or any Guarantor, and Borrower and Guarantor agree to look solely to the assets of Lender in connection with any claim made in connection with the loan described in this Commitment Letter.

ECF No. 10-4 at 6. Condition "n" of the Loan Commitment letter stated in part:

> BORROWER AND GUARANTOR DO HEREBY ATTEST, CERTIFY, WARRANT AND REPRESENT THAT THE PROCEEDS OF THE LOAN ARE TO BE USED SOLELY FOR BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

*Id.* The Commercial Promissory Note attached to the Loan Commitment Letter stated the "Note evidences a loan for business and commercial purposes and not for personal, household, or family purposes." *Id.* at 23.

Ms. Estrella secured the loan by a mortgage deed as well as with Ms. Estrella's personal guaranty of her LLC's obligations as a Borrower. *Id.* at 21. The Guaranty attached to the Loan Commitment letter stated that Ms. Estrella, as the guarantor, agreed to pay "all costs and expenses . . . incurred by Lender in endeavoring to enforce [the] Guaranty." *Id.* at 52. The Guaranty also contained an indemnification clause that obligated Ms. Estrella to indemnify PNF for any "demands, liabilities, obligations, losses, damages, penalties, actions, causes of action, judgments, suits, claims, costs, expenses and disbursements of any kind or nature whatsoever . . . ." *Id.* at 53.

The Mortgage Deed attached to the Loan Commitment letter explained that, "[i]n the event of default," the Grantee may:

> Foreclose this Mortgage under any method of foreclosure in existence at the time or now existing, or under any other applicable law. Based upon the fact that the Note secured hereby is for commercial purposes, the Grantee shall have the Statutory Power of Sale in addition to all other rights and remedies if Grantor is a corporation . . . .

*Id.* at 33.

### III. Post-Loan Activity

Ms. Estrella faced financial difficulty due to COVID-19 and she became unable to make timely payments on the loan. Ms. Estrella and PNF attempted to resolve the issues regarding her late payments through subsequent agreements. However, PNF ultimately issued its final default notice to Ms. Estrella on December 17, 2024, and demanded full payment of the loan by January 3, 2025. On February 13, 2025, PNF's counsel served Ms. Estrella a notice of the upcoming foreclosure and sale of the Property. PNF published three notices of the sale in the Bangor Daily News. *See* ECF No. 10-7 at 10.

Ms. Estrella sought relief from the Maine Superior Court to prevent the Property from being sold, *see* ECF No. 10-9, but was unsuccessful. On March 20, 2025, PNF itself purchased the Property at a public foreclosure sale held at the Property site.

### Legal Standard

Both temporary restraining orders and preliminary injunctions are "extraordinary and drastic remed[ies] that [are] never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8–9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011)). For both types of relief, Ms. Estrella, as the moving party, must demonstrate that she is (1) likely to succeed on the merits, (2) likely to suffer irreparable harm, (3) the balance of

equities tip in her favor, and (4) an injunction is in the public interest. *See Sindicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F.3d 1, 10 (1st Cir. 2012). "If the moving party cannot demonstrate that [she] is likely to succeed in [her] quest, the remaining factors become matters of idle curiosity.*" New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) (quotation modified).

## Discussion

## I. Claim Splitting

PNF argues first that this Court should refrain from hearing this matter under the doctrine of claim-splitting due to Ms. Estrella's suit against PNF in the Maine Superior Court.

The doctrine of claim-splitting prevents a litigant "with multiple related claims" from separating, "or splitt[ing], the claims into multiple successive cases." *Sargent v. MaineHealth*, No. 2:22-CV-00006, 2022 WL 2132272, at *9 (D. Me. June 14, 2022); *see also Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1165 (1st Cir. 1991). Instead, litigants are charged with including "in the first action all of the claims that fall within the [c]ourt's jurisdiction." *Sargent*, 2022 WL 2132272, at *9. The claim splitting analysis draws on the principles of res judicata, however "claim splitting is more concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting finality of judgments." *Perry v. Alexander*, No. 2:15-cv-00310-JCN, 2017 WL 3084387 at *3 (D. Me. July 19, 2017). The test for claim splitting is "whether the first suit, assuming it were final, would preclude the second suit." *Klane ex rel. Klane v. Mayhew*, No. 1:12-CV-00203, 2013 WL 1245677, at *7 (D. Me. Mar. 26, 2013) (citing *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir.2011)).

Here, Ms. Estrella filed claims against PNF first in the Maine Superior Court and later in this Court. PNF cites no authority that applies the claim-splitting doctrine to cases filed in separate jurisdictions. *See, e.g.*, *Klane*, 2013 WL 1245677, at *7 (finding the plaintiff failed to prove the claim-splitting doctrine applied when the plaintiff filed a previous suit in state court). Accordingly, the doctrine of claim-splitting is inapplicable here.

## II. Preliminary Injunction

Ms. Estrella posits that she has demonstrated that she is likely to succeed on the merits of her claims against PNF. I do not agree.

In the complaint, Ms. Estrella asserts various claims pursuant to the Truth in Lending Act, Home Ownership and Equity Protection Act, Equal Credit Opportunity Act, Secure and Fair Enforcement of Mortgage Licensing Act, Maine's Consumer Credit Code, the Maine Unfair Trade Practices Act, and the Racketeer Influenced and Corrupt Organizations Act. In her motion, Ms. Estrella states that the "central allegation in [her] complaint is that [PNF] devised and executed a scheme to evade residential mortgage protections by coercing [her] into transferring title of her personal residence into a limited liability company (LLC)." Pl.'s Mot. TRO at 4. However, Ms. Estrella includes only her declaration and presents no other evidence in support of her claims. *See Gladu v. Correct Care Sols.*, No. 2:15-CV-384, 2015 WL 5693055 (D. Me. Sept. 28, 2015) ("Yet other than his bald assertions, [the plaintiff] offers no supporting documentation for his asserted [claims]." (quotation modified)). In contrast, PNF submitted evidence, including a declaration, email communications between Ms. Estrella and Mr. Floros, and the Loan Commitment letter signed by Ms. Estrella, that indicates Ms. Estrella's plan was to use the Property for commercial purposes, as well that Ms. Estrella agreed

to transfer ownership of the Property to an LLC to obtain the loan. *See* ECF No. 10-2 at 2; ECF No. 10-3 at 4; ECF No. 10-4.

Similarly, while Ms. Estrella argues that PNF did not provide her meaningful disclosures of the loan terms, the record evidence does not support her allegations. *Id.* Both the email communications between Ms. Estrella and Mr. Floros and the Loan Commitment letter, signed by Ms. Estrella, detail the classification and terms of the loan. Thus, her complaint and motion do not support a finding of misrepresentation with respect to the characterization of the loan. *See Ruiz v. NationStar Mortg. LLC*, No. 17-3434, 2018 WL 3975635, at *2 (D. Md. May 18, 2018) ("To meet the first requirement, the plaintiff must clearly demonstrate that she will likely succeed on the merits, rather than present a mere grave or serious question for litigation." (quotation modified)).

Further, Ms. Estrella provides only bald assertions to support her claim that PNF acted in violation of law by issuing the loan without the required license. Likewise, she includes only conclusory statements regarding her claim that PNF discriminated against her, as a member of a protected class, in issuing the loan for the Property. *E.g.*, *McAllister v. Countrywide Home Loans, Inc.*, No. CV 16-10911, 2016 WL 3360482, at *4—*5 (D. Mass. June 16, 2016) (finding the plaintiffs failed to demonstrate they were likely to succeed in their various challenges to the defendant's foreclosure plans). Thus, Ms. Estrella has not demonstrated how she is likely to succeed on the merits of her claims against PNF.

Additionally, while likelihood of success is the "sine qua non" of the preliminary injunction analysis, *New Comm*, 287 F.3d at 9, Ms. Estrella's failure to prove irreparable harm further supports my conclusion here. PNF followed the required procedure in

issuing Ms. Estrella a default notice and notice of sale, and PNF ultimately purchased the Property itself in the foreclosure sale on March 20, 2025. PNF took possession of the Property by foreclosure deed on April 19, 2025. To the extent Ms. Estrella seeks to undo the foreclosure, "this [C]ourt lacks the power to turn back the clock." *Rubacky v. Morgan Stanley Dean Witter Credit Corp.*, 104 F. App'x 757, 758 (1st Cir. 2004). Foreclosure and sale of the Property cannot be prevented by a preliminary injunction as both have already occurred. To the extent Ms. Estrella seeks to prevent a subsequent sale or transfer of the Property, even regardless of whether or not that is an appropriate or likely remedy, any such a sale is based on mere speculation as Ms. Estrella does not provide the Court with evidence of PNF's listing or plans to list the Property for sale. *See id.* (finding no irreparable harm existed where plaintiff did not file evidence to demonstrate "that any future sale has been or will be scheduled"). "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). As such, Ms. Estrella's unsubstantiated prospection of irreparable harm is insufficient to warrant injunctive relief.

Ms. Estrella does not meet the burden required for me to grant her request for injunctive relief.

**CONCLUSION**

For the foregoing reasons, I **DENY** the motion for a temporary restraining order and preliminary injunction.

**SO ORDERED.**

Dated this 14th day of August, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**